TRUAX v. GEORGE F. CHILDS ADJUSTABLE PARLOR CHAIR CO. et al.

(Circuit Court, N. D. Illinois, N. D. March 5, 1894.)

No. 21,790.

1. PATENTS—ANTICIPATION.

Devices and publications leading up to, but not fully accomplishing, a desired end, do not anticipate an invention which for the first time effectively meets all requirements and successfully accomplishes such end.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 71.]

2. SAME—INFRINGEMENT—SURGICAL PUMP.

The Allen patent, No. 424,941, for a surgical pump for use in the transfusion of blood and for similar purposes, in which it is necessary that the flow of the liquid as to volume and speed should be subject to the most delicate and exact control by the operator, was not anticipated and discloses invention; also held infringed.

In Equity.

Offield & Towle, for complainant.
J. H. Whipple, for defendants.

GROSSCUP, District Judge. The bill in this case is to enjoin the defendants from infringing Letters Patent 365,327, 424,944 and 425,015, covering an alleged improvement in instruments for the transfusion of blood and other purposes. The first patent was granted on June 21, 1887, and the two latter April 8, 1890. The defendants allege anticipation, non-patentability, and non-infringement.

The complainant relies chiefly upon the claims of the two patents last named, and in the view I have taken of this case, it is unnecessary to consider more than the claims of the second patent No. 424,944.

The conception of the transfusion of blood from one individual to another is not new. The complainant, who comes in under the rights of Allen, the patentee, claims no patent upon that conception, and could

obtain none had it been original with Allen. Neither are the devices for the general purpose of pumping or transmitting fluids by means of an elastic hose, encircling the inside of a metallic case, and subjected to pressure from a roller revolved thereon, new. These devices were in use for many years before Allen's patent, and could, when the idea of transfusing blood was conceived, have been easily adapted to that purpose, had there been nothing in the operation that required further consideration than the mere transmission of the blood fluid from one person to another.

Allen, however, is entitled to be regarded as a pioneer in the field of adapting these old devices to this highly useful purpose. The only thing that approaches an anticipation of his effort in this direction is the French publication of July 15, 1874, which discloses an apparatus consisting of a tube of rubber, rolled on the interior of a wheel, on which is pressed a roller set in motion by a crank. The tube once filled, the roller, in turning, forces the liquid forward, and thus leaves a vacuum, which, in turn, draws in a new quantity of the liquid. It was so adjusted that at each revolution of the crank, there passed through three centimetres cubes of blood, thus permitting of the exact measurement of the quantity transfused.

This publication is a sufficient guide to the construction of an instrument, by which the old devices of an elastic rubber tube, within a metallic case, operated upon by a roller, may be adapted to the new purpose of transfusing blood. If Allen has made no advance upon the thought thus set forth, complainant is not entitled to the relief now sought. But, while the general device was old, and this French publication pointed out a method of its adaptation to a new purpose, the field of practical instruments for this purpose remained unoccupied until Allen entered it with his first invention. Provided with the old device and the French hint to its new adaptation, he began his labors which have resulted in the present perfected and highly useful surgical pump.

The subject-matter upon which his invention was to operate was, in all essential respects, practically novel, and highly delicate. The transfusion of blood from one individual to another, or of fluids into, or from, individuals, required considerations not applicable to the uses to which these pumps had been previously put. The old devices were, possibly, capable of measuring the quantity of fluids passed, and of being so adjusted as to regulate the rapidity or volume of the flow. In none of them, however, was there any means of such regulation, except by a stoppage of the flow, and readjustment of the roller; and in all of them, when employed in the transfusion of blood, there was great danger of the introduction of air, or of the coagulation of the fluids, whereby, in a majority of cases, death was caused. At just this point, and in this respect was the defect of the previous devices as surgical pumps. In his first invention, Allen created a device whereby the fluid could be transmitted by continuous moving pressure from one point to another, without exposing it either to the air, or the danger of coagulation. In his later devices, and especially in the one No. 424,-944, he introduced a method, whereby the volume and speed of the moving liquid could be controlled by an apparatus independent of the

mechanism which operated the roller. This, for the first time, put into the power of the surgeon, the most delicate control of the flow, harmoniously with its uninterrupted continuance. Possessed of this instrument the surgeon could without appreciable suspension of the current, either reverse it, or cause it to be enlarged or diminished. I regard this as not simply advantageous but highly essential to an effective surgical pump. Allen seems to have been the first to realize that this mechanical effect could be accomplished only by the combination in one instrument of two moving mechanisms wholly independent of each other. He accomplished this by a mechanism which is described in his patent as follows:

Within the case is the arbor G, one end of which is journaled in the front plate, and the other, in the back plate. * * * Attached to the arbor G, and extending laterally therefrom, is the bar I, to the opposite extremity of which is hinged the bar J, which is in turn, connected with the roller carriage L, for the roller end. Beyond the carriage L, the arm J is prolonged into the curved spring piece K, which curves inward and backward, so that its extremity rests against the arbor G, when the pressure of the roller upon the tube is released.

The independent mechanism combined with the foregoing to regulate the pressure of the roller upon the tube is described as follows:

"The arbor G is chambered concentrically and within this chamber is placed a supplemental arbor H, capable of turning within the arbor G, and projecting outside of the case A, on the opposite side to that upon which the crank is located. A thumb piece is fixed upon the outer end of the arbor H, for turning the same, and arm P, is fixed upon the arbor H, and projects laterally upon the same through the arbor G, which is slotted for that purpose. The slot through the arbor G extends sufficiently far round to admit of the arm P being moved. * * * The slot is also locked at the point at which the curved portion K rests upon the arbor, and the arm P and curved part K are therefore in position to act upon one another."

The effect of this combination was such that by a pressure upon the thumb piece upon the side of the case opposite to that of the crank, the arm attached to the inner arbor would thrust the arm attached to the outer arbor, and connected with the carriage of the roller, out ward against the tube or, by a reverse motion, release it. This increase of pressure was easy, gradual, and within the control, at every point, of the surgeon, and at three different points, caused the roller to be locked independently of the fingers of the surgeon. The mechanism, in effect, put the pressure of the roller and, therefore, the flow of the fluid transmitted effectually under the finger of the surgeon. In my opinion, this was a patentable advance upon all previous devices, or published conceptions. It made what was previously known adaptable, for the first time, in this delicate way, to the purposes of surgery. It was anticipated as every useful invention has been, by devices and suggestions leading up to this accomplishment. But, this combination is the first accomplishment, in point of needed delicacy, of the end sought. The French publication and the previous devices called to my attention, undoubtedly carried Allen far toward the result attained, but they fell short of pointing out a surgical pump of the operation of which the surgeon was the complete master without interruption. Allen's invention put within the power of the surgeon, not simply the flow and pressure of the blood, but such regulation without the intervention

of a moment's delay. This is a high consideration and a great advance, in view of the purpose to which it is put. It means, in many cases, the saving of life where a moment's interruption would bring on death. I am impelled, by these considerations, to grant to the complainant a liberal construction of the claims of patent 424,944. In my judgment, he is entitled to claims 1, 2, 6, 7, and 8 of that patent.

The defendants' device without question borrows the central thought of complainant's invention. It is a combination in all respects essentially like the complainant's device, except that the radical motion of the roller is produced by a moving wedge instead of the revolving bar. It is not necessary to determine whether these two mechanisms are mechanical equivalents. It is my judgment that they are, but whether this be true or not, the defendants device infringed upon the more general claim which I have allowed.

For the foregoing reasons, an injunction will issue as prayed for in the bill.